FILED

2007 Apr-11  PM 05:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| RODNEY LEE INMON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-06-S-1712-NW |
| | ) | |
| KEVIN WILLIAMS, HAROLD | ) | |
| PENDLEY, and NORTH | ) | |
| MISSISSIPPI MEDICAL | ) | |
| CENTER d/b/a HAMILTON | ) | |
| HOSPITAL, ET AL., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion for leave to amend complaint (doc. no. 34). The court extended the time for plaintiff to file an amended complaint up until January 31, 2007.[1] Plaintiff filed a Second Amended Complaint on January 31, 2007, but inadvertently failed to file a motion for leave to file the amended complaint.[2] Plaintiff filed a motion for leave the next day.[3] Plaintiff's Second Amended Complaint adds seven new defendants in their individual capacities, and adds additional constitutional and state law claims against all defendants.[4]

---

[1] *See* doc. no. 30 and order of January 10, 2007, granting extension until January 31, 2007 to amend complaint.

[2] *See* doc. no. 33 (Second Amended Complaint).

[3] *See* doc. no. 34 (motion for leave).

[4] *See* doc. no. 33 (Second Amended Complaint). The original defendants are Kevin Williams, Sheriff of Marion County, Alabama, Harold Pendley, Jail Administrator of the Marion County Jail, and North Mississippi Medical Center d/b/a Hamilton Hospital, which provides medical care and treatment pursuant to contract. The defendants added in the Second Amended Complaint are Brett Ballard (nurse of the Marion County Jail), Jason Johnson (jailer), Joe R. Vosquez (jailer), Shane Mason (jailer), Jeff Davis (jailer), Cesar Romero, M.D., and John Kerr, M.D.

Defendants Williams and Pendley object to the filing of an amended complaint arguing that the addition of claims and defendants is futile because of the expiration of the statute of limitations on the additional claims and because the requirements of Rule 15(c) are not satisfied.  Additionally defendants argue that the additional state law claims previously have been dismissed and are barred by immunity.  Plaintiff concedes that the state law claims as to the Sheriff and jail defendants should be dismissed.[5]  Thus, the court will focus its analysis on the federal claims and defendants that were added in the Second Amended Complaint.

### I.  Whether the new claims against the present defendants relate back to the filing of the original complaint.

Defendants Williams and Pendley argue that plaintiff's additional claims against them fail to meet the requirements of Federal Rule of Civil Procedure 15, in that the claims do not arise out of the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. Pro. 15(c)(2). The original pleadings alleged that plaintiff had a history of cancer, injuries stemming from a car wreck, and mental illness causing him to be under the care of physicians since 1996.[6]  Plaintiff's doctors prescribed Methadone, two to three times per day for pain, as well as Klonopin, Zanaflex, and Elavil.[7]  On or about August 30, 2004, plaintiff was arrested by a Marion County Sheriff's deputy for "erratic" driving and later charged with DUI and possession of controlled substances relating to his

---

[5] *See* doc. no. 36 (plaintiff's response to defendants' opposition to plaintiff's motion for leave).

[6] *See* doc. nos. 1 and 18 (complaint and amended complaint).

[7] *See id*.

2

medically necessary and legally prescribed medications.[8]  Plaintiff was taken to the Marion County Jail following his arrest and, once there, allegedly was denied medically prescribed medications on a daily, regular, and consistent basis.[9]

The original pleadings allege that from August 30, 2004 through September 5, 2004, plaintiff was given no medical treatment as prescribed by his doctors, despite going into withdrawal symptoms while under the control of defendants and continually requesting that he be provided his medications.[10]  Plaintiff further alleged that defendant Pendley was the person to whom Sheriff Williams designated and delegated the responsibility of supervising, monitoring, and instructing the jail personnel, seeing to it that prisoners with serious medical needs were given constitutionally guaranteed medical treatment, and ensuring that the jail staff operated the Marion County Jail in accordance with all applicable laws, standards, policies and procedures.[11]  Plaintiff further alleged that defendant Pendley told him, "Kevin Williams doesn't give any medicine in his jail," and that Williams told him "we're going to get you off that Methadone."[12]

Plaintiff alleged in the original pleadings that, despite his parents' repeated visits to the jail for the purpose of delivering his prescribed medications, as well as a faxed document from plaintiff's treating physician describing the medical necessity for plaintiff to be dispensed prescribed medication, defendants refused to provide him

---

[8] Doc. nos. 1 and 18 at 3.

[9] *See* doc. nos. 1 and 18 at 3.

[10] *See id.* at 4-5.

[11] *See id.* at 4.

[12] Doc. no. 1 at 4, doc. no. 18 at 5.

his medically necessary medication.[13]  "As Plaintiff's symptoms of withdrawal worsened, for the first time in his life he began to experience seizures.  He was reduced to lying on the floor in the jail as seizure after seizure racked his body."[14] Plaintiff further alleges hearing Sheriff Williams say while observing one of his seizures that he had "never seen a thirty year old man piss and shit in his pants in his jail."[15]

On September 6, 2004, Plaintiff's symptoms became so severe that he was finally taken to North Mississippi Medical Center (Hamilton Hospital) in Hamilton, Alabama, where he received inadequate medical care.[16]  Hamilton Hospital restored only one of his prescribed medications, failing to adhere to his treating physicians' instructions, and returned him to the jail following an overnight stay where his seizures continued to worsen.[17]  After plaintiff was finally released to his parents with a security ankle bracelet, and he was taken to the emergency room at Russellville Hospital, plaintiff was diagnosed as suffering withdrawal symptoms from substance abuse.[18]  Subsequent medical providers diagnosed plaintiff's seizure condition; he suffered three to four hundred seizures while later hospitalized at UAB.[19]  In addition to the seizures, plaintiff suffered broken teeth, assorted bruises and contusions, as

---

[13] See doc. nos. 1 and 18 at 5.

[14] Doc. nos. 1 and 18 at 5.

[15] Doc. no. 1 at 5, doc. no. 18 at 6.

[16] See doc. nos. 1 and 18 at 5-6.

[17] See id. at 6.

[18] See id. at 7.

[19] See doc. no. 1 at 7, doc. no. 18 at 7-8.

well as sores.[20]  "At one point he was shocked with a tazer [sic] gun while experiencing a seizure."[21]

In the original pleadings, plaintiff alleged that defendants

(a) *participated* in the on-going pattern of neglect, mistreatment and abuse of Plaintiff Rodney Inmon, by their deliberate indifference to his current serious medical needs, meaning, their failure to provide, recommend, or notify those officials in a timely manner (of Plaintiff's serious medical condition) whose duty it was to then provide or order the medical treatment or (b) *participated* in the constitutional violations because they saw or heard or had notice and/or knew from other means of his serious medical condition and with deliberate indifference failed to take steps to get him to the hospital or get medical treatment, or concealed their knowledge of his serious medical condition, or were deliberately indifferent to it, such that they failed to notify someone with the authority to get him to the hospital and/or once at Defendant Hamilton Hospital, they failed to get him adequate medical treatment for his serious medical condition, despite their knowledge of a substantial risk of serious harm to the Plaintiff.  This mistreatment continued once Plaintiff was returned to the jail following his stay at Defendant Hamilton Hospital.
    This conduct of these Defendants was the proximate cause of the abuse and torture of Plaintiff, depriving him of his Constitutional rights ensured under the Fourteen Amendment of the U.S. Constitution.[22]

The Second Amended Complaint alleges more factual detail such as the following paragraph:

While suffering a seizure and lying incapacitated, in his own waste, on the jail cell floor, a "Trusty" ordered Plaintiff to get off the floor to take a shower.  Plaintiff was physically unable to lift himself off the floor. When Plaintiff was unable to rise, the "Trusty" entered the cell and administered a shock to the Plaintiff with a TASER.  The Trustee [sic] and Sheriff Williams removed Plaintiff from the jail cell and placed him in the shower; Plaintiff was unable to stay standing and he fell, resulting in further injury.[23]

---

[20] *See* doc. nos. 1 and 18 at 9.

[21] *Id*.

[22] Doc. no. 18 at 8-9; *see also* doc no. 1 at 8-9.

[23] Doc. no. 33 at 7-8.

In addition to the previously asserted claims for deliberate indifference to serious medical needs, the Second Amended Complaint asserts federal claims of excessive force under the Fourth and Fourteenth Amendments; nonfeasance or failure to intervene and take reasonable steps to protect a victim from another's misconduct; and failure to adequately train and supervise, all arising from the time plaintiff was held in the Marion Count y Jail and briefly transported to Hamilton Hospital.

Defendants argue that plaintiff's additional claims do not arise from a common core of operative facts uniting the old and new claims both as to time and type. Were the allegations not so serious, this argument could be described as laughable. Defendants cannot seriously contend that the additional claims do not arise out of the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. Pro. 15(c)(2). Defendants' arguments ring hollow with statements like "Nowhere in the original Complaint did the Plaintiff allege he was subjected to a TASER."[24] As outlined earlier, plaintiff specifically mentioned the TASER incident in the original pleadings,[25] albeit not in as much detail as that recounted in the Second Amended Complaint. Plaintiff's original pleadings alleged facts that support the claims further delineated in the Second Amended Complaint, including facts describing the supervisory role of Williams and Pendley. Thus, the additional claims against Williams and Pendley should relate back to the filing of the original complaint.

---

[24] Doc. no. 35 at 6.

[25] *See* doc. nos. 1 and 18 at 9.

## II. Whether new defendants may be added in the Second Amended Complaint.

Plaintiff filed his original complaint in this action on August 31, 2006.[26] According to defendants, the statute of limitations on this § 1983 action expired on September 9, 2006.[27] A claim or party can be added after a lawsuit has been filed and the statute of limitations has expired only if the requirements of Federal Rule of Civil Procedure 15(c) are satisfied. That rule provides:

> **(c) Relation Back of Amendments**. An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the property party, the action would have been brought against the party.

Fed. R. Civ. Pro. 15(c).

Defendants argue that Rule 15(c)(3) only allows plaintiff to correct the names of a misidentified party, not to add seven previously unnamed defendants. Defendants rely on *Powers v. Graff*, 148 F.3d 1223 (11th Cir. 1998), in support. In *Powers*, plaintiffs filed suit against a brokerage company and a group of individual brokers alleging federal securities law violations. After the applicable statute of

---

[26] *See* doc. no. 1.
[27] *See* doc. no. 35 at 3.

7

limitations had expired, the plaintiffs amended their complaint to add several defendants.  The plaintiffs knew the defendants' identities early in the litigation, but only when one of the original defendants faced possible insolvency did the plaintiffs amend their complaint to add these known defendants.   The Eleventh Circuit concluded that there was never a "mistake" about the identities of the defendants, but instead, plaintiffs made a conscious choice not to originally sue the defendants.  *See Powers*, 148 F.3d at 1228.

One court has described the relevant inquiry under *Powers* as "whether the amendment corrects a 'mistake' about the identity of the defendant," and not "whether the amendment seeks to 'add' or 'change' a defendant."  *Chumney v. U.S. Repeating Arms Company, Inc.*, 196 F.R.D. 419, 429 (M.D. Ala. 2000).  Additionally, "whether a plaintiff made a 'mistake' rather than a conscious choice, in originally omitting the relevant defendant turns on whether the newly added defendant was known to the plaintiff before the running of the statute of limitations."  *Id*.

The Court of Appeals for the Third Circuit has noted the peculiar importance of this inquiry in civil rights cases where a person who was subjected to excessive force by police officers might not have seen the officers' name tags and, hence, would likely need discovery to determine the names of his attackers.  *See Singletary v. Pennsylvania Department of Corrections*, 266 F.3d 186, 190 (3d Cir. 2001).  The court went so far as to suggest to the Judicial Conference Advisory Committee on Civil Rules that it amend the language of Rule 15(c)(3)(B) so as to clearly provide that the requirements of that section are met in situations in which the plaintiff seeks

to replace "John Doe" or "Unknown Person" with the name of a real defendant.[28]

In the Northern District of Alabama, our Local Rules do not even permit formal discovery until after the parties' planning meeting. *See* LR 26.1(c). Further, initial disclosures are not required until 20 days after the parties' planning meeting. *See* LR 26.1(a)(1). Identifying the jailers involved in alleged mistreatment prior to the expiration of the limitations period under such circumstances may be an impossible task. Mindful of the practical challenges facing a civil rights plaintiff in identifying the proper defendants to sue in a case such as this, the determination of whether omitting the names of the additional jailers and doctors was a "mistake" or a conscious decision cannot be determined by the parties' submissions at this stage. Neither side has addressed these issues in their arguments on the motion for leave.

Another factor that must be considered in determining whether the proposed amendment should relate back is whether the additional defendants in the Second Amended Complaint received notice of the institution of the action so that the additional defendants will not be prejudiced in maintaining a defense on the merits, and whether they knew or should have known that, but for a mistake concerning the identity of the property party, the action would have been brought against them. *See* Fed. R. Civ. Pro. 15(c)(3). Again, the court has been presented with insufficient

---

[28] *But see Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999), *overruled on other grounds*, *Manders v. Lee*, 338 F.3d 1304 (11thCir. 2003) (holding that the substitution of a newly named party for a "John Doe" defendant in the original complaint does not meet the "but for mistake" requirement in Rule 15(c)(3)). *Wayne* only dealt with the replacement of a "John Doe" defendant. "District courts in the Eleventh Circuit, following the holding in *Powers*, have allowed amended complaints to relate back when the amendment corrects a mistake about the identity of a named defendant which was not uncovered until after the statute of limitations had run." *Williams v. Grieg Shipping A/S*, 219 F.R.D. 537, 539 (S.D. Ala. 2003) (citations omitted).

information at this stage of the proceedings to make this determination.  This is likely because discovery is necessary on these very issues before such determinations can be made.  Often, these issues are presented in motions for summary judgment after the parties have an opportunity to make the relevant inquiry.

In any event, because the relation back provisions of Rule 15 are to be liberally applied, and there is no indication in the objection to the motion for leave to amend the complaint that the newly added defendants were known to plaintiff before the running of the statute of limitations, the prudent course would be to allow the amendment to occur.  *Cf. Powers*, 148 F.3d at 1226.  Any challenge on the basis of statute of limitations for the newly added defendants can be presented after discovery is completed, in the form of a motion for summary judgment.  *See, e.g., Powers*, 148 F.3d 1223 (11th Cir. 1998) (issue raised in a motion for summary judgment); *Chumney*, 196 F.R.D. 419 (M.D. Ala. 2000) (same).

### III.  Conclusion

In light of the foregoing, the motion for leave to amend complaint is GRANTED.

DONE this 11th day of April, 2007.

_____
United States District Judge